### A02A0915. MORENO v. STRICKLAND.
(567 SE2d 90)

BARNES, Judge.

Jeremy David Strickland, an incapacitated adult represented by his guardian Shree Strickland, sued Brigido Servin Moreno for personal injuries he suffered while riding a motorcycle that collided with Moreno's truck. In his answer, Moreno asserted the affirmative defense of accord and satisfaction. Strickland moved for partial summary judgment on Moreno's accord and satisfaction defense, and after a hearing, the trial court granted partial summary judgment on this issue to Strickland. The court held that, as a matter of law, the parties did not reach a settlement agreement in this case.

On appeal, Moreno makes four arguments: (1) whether the parties reached a settlement agreement is a jury question; (2) no writing was required to make the agreement effective, but if one were, a writing exists; (3) the trial court improperly shifted the burden of production to the nonmovant, Moreno; and (4) a motion for summary judgment is not the proper avenue to defeat the affirmative defense of accord and satisfaction. Because we agree that, under these facts, whether the parties reached a settlement agreement is a jury question, we reverse the trial court's grant of partial summary judgment to Strickland.

On appeal from the grant of summary judgment, this Court conducts a de novo review of the record, construing the evidence and all inferences therefrom in favor of the nonmoving party. *Maddox v. Southern Engineering Co.*, 231 Ga. App. 802-803 (500 SE2d 591) (1998).

Viewed in that light, the evidence shows that, on June 22, 2000, Strickland offered by letter to settle his claim with Moreno for liability insurance limits of $25,000, $500 property damages, $432 for a guardian bond, an affidavit that Moreno had no assets, and certain release language, specifying that the offer would expire on July 21, 2000. The attorneys for Strickland and Moreno agree that they spoke on the phone on July 18, 2000, but disagree on exactly what was said. Moreno's attorney testified at deposition that the insurance company offered to pay policy limits before a demand was even made, and that he called Strickland's attorney on July 18, 2000, to tell him he was authorized to accept the terms of the settlement offer, but did not have Moreno's affidavit of no assets in hand.[1] Moreno's attorney further testified that he made a note to file on July 18, 2000, that said: "7/18/2000, telephone conference with Plaintiff's attorney. I agreed to settle with indemnification language out of release, will pay bond premium. He said, no problem, I'm waiting on affidavit from Defendant."

On July 26, 2000, Strickland sent another letter that stated: "This serves to confirm that our compromise offer of 6/22/00 has not been accepted. The offer expired at 5:00 p.m. local time on July 21, 2000. Specifically, I have not received the release nor monies."

On July 27, 2000, Moreno hand-delivered a letter to Strickland, the contents of which are as follows:

> This will confirm our conversation of Thursday, July 27, 2000. Furthermore, please find a draft and the settlement documents which you requested in the above-referenced case. Specifically, there is a Limited Release and three drafts, one for $25,000 for Shree Strickland, one for $500.00 for property damage and one for $432.00 for the Bond. As I told you when we spoke on July 18, 2000, I accepted all of the terms and conditions of your letter of June 22, 2000, and I was waiting to receive the Affidavit back from my clients. I received the Affidavit back, but it was not notarized. I am

---

[1] The affidavit Strickland initially drafted included a provision that Moreno owned no vehicles, but because he owned a truck, his lawyer redrafted it and sent it to Strickland. The redraft stated that Moreno had no real property "in the United States," which Moreno's counsel then redacted per Strickland's request. This draft was sent to the wrong address for Moreno's signature and then resent to the correct address, but Moreno returned it without having it notarized.

hand delivering this package to you today, and I certainly feel like with all the great lengths that we have gone to in this case, we have reached an amicable settlement. I am sorry if you misconstrued any of my statements to you, and I hope this resolves any and all issues. Please keep any and all settlement monies in your escrow account until the necessary approval is obtained from the Probate Court.

Moreno's attorney sent another letter on September 13, 2000, enclosing the affidavit he "finally received back" from his client, and continuing:

I have heard nothing from you since our last meeting, and it was my understanding that your clients were going to discuss whether or not they would settle this case pursuant to a Limited Release as we agreed upon earlier and get back with me. On behalf of the defendant, Progressive still stands ready to pay your clients the policy limits in exchange for a Limited Release.

Finally, on September 19, 2000, Strickland's lawyer replied to Moreno's lawyer, stating among other things that Moreno failed to tender a release and affidavit "within the time limit set out in the offer." He further stated, "I could not agree to a settlement without seeing the language of the limited liability release and affidavit to ensure their compliance with our offer of settlement." Strickland filed suit against Moreno on October 12, 2000.

1. An accord and satisfaction is a contract, which requires a meeting of the minds to render it valid and binding. *Woodstock Road &c. v. Lacy*, 149 Ga. App. 593, 594 (1) (254 SE2d 910) (1979). A definite offer and complete acceptance, for consideration, create a binding contract. *Herring v. Dunning*, 213 Ga. App. 695 (446 SE2d 199) (1994). While an agreement may be oral, if the parties disagree on whether an agreement was reached, the agreement must be memorialized in a writing to be enforceable, *Scott v. Carter*, 239 Ga. App. 870, 873 (521 SE2d 835) (1999), and the absence of a writing prevents enforcement. *LeCroy v. Massey*, 185 Ga. App. 828 (366 SE2d 215) (1988).

This requirement of a writing goes to the certainty that an agreement exists and to the certainty of the terms of the agreement. . . . The writing which will satisfy this requirement ideally consists of a formal written agreement signed by the parties. However, letters or documents prepared by

attorneys which memorialize the terms of the agreement reached will suffice.

*Brumbelow v. Northern Propane Gas Co.*, 251 Ga. 674, 676 (308 SE2d 544) (1983).

An attorney's letter confirming an oral agreement in which one party accepted another party's offer may constitute such a writing, *Stacey v. Jones*, 230 Ga. App. 213, 215 (2) (495 SE2d 665) (1998). Transcripts of telephone conversations between attorneys may "satisfy the writing requirement by providing certainty and finality as to the exact terms of the agreement." *Tranakos v. Miller*, 220 Ga. App. 829, 833 (1) (470 SE2d 440) (1996). We have also held that an attorney's handwritten notes may provide "some evidence upon which the court could base its decision about the existence and terms of the purported agreement," although in that case the notes did not constitute a full and binding statement of the essential terms of the agreement. *Tekin v. Whiddon*, 233 Ga. App. 645, 647 (1) (504 SE2d 722) (1998).

In this case, the parties do not dispute the terms of the agreement, only whether the defendant accepted the offer. The file notes of Moreno's attorney therefore provide some evidence regarding the existence of the agreement, as do the July 26, 2000 and September 19, 2000 letters from Strickland's lawyer indicating he thought the offer had expired because he had not received the release, money, and affidavit in time. Additionally, the July 27, 2000 letter from Moreno's attorney accepting the offer provides further evidence, sufficient to create a question of fact regarding whether the parties settled this claim, despite the fact that it was not written contemporaneously. See *Stacey v. Jones*, supra, 230 Ga. App. at 215. Therefore, the trial court erred in granting partial summary judgment to Strickland on Moreno's affirmative defense of accord and satisfaction.

In this case, Strickland contends that Moreno's failure to deliver the affidavit and release before the time limit expired means he did not accept the offer to settle. "An offer may be accepted, however, either by a promise to do the thing contemplated therein, or by the actual doing of the thing. The offer must be accepted in the manner specified by it; and if it calls for a promise, then a promise must be made; or if it calls for an act, it can be accepted only by the doing of the act." (Citation and punctuation omitted.) *Herring v. Dunning*, supra, 213 Ga. App. at 699. Strickland's offer to settle did not include the requirement that he receive the affidavit and release before the time limit expired, and his statement that he "could not agree to settlement without seeing" the papers reveals his misapprehension of the process. He is saying he offered settlement terms, but could not settle without ensuring that the documents complied with those terms. To the contrary, "the presentation of a proper release in a form

acceptable to plaintiff may have been a condition of defendant's performance but it was not an act necessary to acceptance of plaintiff's offer to settle for the policy limits." Id.

2. In light of our holding in Division 1, we need not address the appellant's remaining enumerations of error.

*Judgment reversed. Pope, P. J., and Ruffin, J., concur.*

DECIDED JUNE 17, 2002.

*Downey & Cleveland, Joseph C. Parker, Sean L. Hynes, Gambrell & Stolz, Irwin W. Stolz, Jr.,* for appellant.

*McNally, Edwards, Bailey & Lander, Donald W. Osborne, Vinson, Talley, Richardson & Cable, James G. Richardson, Michael T. Camp,* for appellee.