**FOURTH DIVISION**
**MERCIER, C. J.,**
**DILLARD, P. J., and LAND, J.**

**NOTICE: Motions for reconsideration must be _physically received_ in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**June 27, 2025**

# In the Court of Appeals of Georgia

A25A0709. WRIGHT v. SPEARMAN et al.

DILLARD, Presiding Judge.

Dwayne Wright appeals from the trial court's denial of his motion to enforce a settlement agreement with Melissa Spearman, Takesha Brown, Genice Brown, and Braxten Barnes,[1] following a motor-vehicle accident. Wright asserts the trial court erred in denying his motion by concluding that the inclusion of blank lines for a notary's signature on a release constituted a counteroffer and, as a result, there was no binding settlement agreement between the parties. For the following reasons, we affirm.

---

[1] For the sake of clarity and convenience, we refer to Melissa Spearman, Takesha Brown, Genice Brown, and Braxten Barnes collectively as the "appellees."

Viewing the record *de novo* in favor of the appellees as the nonmoving parties,[2] it shows the appellees filed suit against Wright on April 11, 2023, seeking damages for injuries they sustained in a motor-vehicle collision. Wright answered on May 22, 2023. A few days later, on May 31, 2023, Wright received a letter from the appellees demanding settlement for the $50,000 policy limit with his insurer, GEICO. In order to accept the settlement proposal, GEICO was required to take several actions, including the return of a signed release that complied with certain specifications.

The appellees' offer letter first provided as follows:

In order for [GEICO] to accept this offer of behalf of its insured, GEICO must take the steps outlined below in this section—"Material Terms of Settlement." If GEICO does not follow those steps exactly, then GEICO's response to this offer will constitute a counteroffer and a rejection of this offer. Also, GEICO has to get it right the first time. If GEICO does not accept this offer in the manner specified below, [the appellees] will take this case to verdict and judgment . . . . In other

---

[2] *See, e.g.*, *Wright v. Nelson*, 358 Ga. App. 871, 871-72 (856 SE2d 421) (2021) (noting that "[w]e apply a de novo standard of review to a trial court's order on a motion to enforce a settlement agreement" and "view the evidence in a light most favorable to the nonmoving party" because such motions are analogous to motions for summary judgment).

words, this offer is GEICO's *one chance* to protect its customer from financial catastrophe, and GEICO needs to get it right.[3]

The terms of settlement included the requirement that GEICO "expressly accept this offer in writing, unequivocally and *without variance of any sort . . . .*"[4] The letter also specified that appellees' counsel would neither "revise or re-write the release sent by GEICO in order to make it comply with this offer" nor "strike through non-complying terms, conditions, or representations contained in the release in order to make a non-complying release comply with the terms and conditions of this offer."

As to signatures on the release, the appellees specified, in relevant part:

Because the release memorializes mutual agreements between GEICO and our clients, an authorized representative of GEICO must also sign the release that is delivered to our firm. The representative of GEICO should sign the release on a signature blank formatted for that purpose. The signature block for the representative of GEICO should appear next to, and be formatted similarly to, the signature block for our client. The signature block should contain the signatory's full name in printed text along with the signatory's professional title. If the proposed release does

---

[3] (Emphasis in original).

[4] (Emphasis supplied).

not contain the appropriate signature from a representative of GEICO, then GEICO's response will not constitute an acceptance of this offer.

Separately, the letter provided that "[a]n officer or authorized representative of GEICO must sign a duly notarized, sworn affidavit swearing that the demanded amount constitutes the entirety of the liability insurance available to Mr. Wright through GEICO." Finally, the letter again warned that "GEICO must accept this offer, unequivocally and *without variance of any sort*, by taking the actions specified in the paragraphs above."

When GEICO sent the release to the appellees, in addition to the above-delineated requirements for the signature block, it included something else: GEICO's representative signed the release with his signature notarized, and there were blank notary lines underneath each signature space for the four appellees.

Wright moved to enforce the settlement agreement, but the trial court concluded that the inclusion of the additional area for notary signatures resulted in a counteroffer, not an acceptance of the appellees' offer to settle. As a result, the court concluded there was no settlement agreement to enforce. At Wright's request, the

court issued a certificate of immediate review, and we granted his application for interlocutory appeal. This appeal follows.

There is, of course, no enforceable settlement between parties "absent mutual agreement between them."[5] And an answer to an offer will not amount to an acceptance, resulting in a contract, unless it is "unconditional and identical with the terms of the offer."[6] So, to constitute an agreement, the offer "must be accepted unequivocally and without variance of any sort."[7] But these requirements can be a trap for the unwary, leading us to caution parties to avoid crossing the line from vigorous advocacy to gamesmanship.[8] Even so, the difference between "cageyness for its own

---

[5] *Grange v. Mut. Cas. Co. v. Woodard*, 300 Ga. 848, 852 (1) (a) (797 SE2d 814) (2017); *accord Frickey v. Jones*, 280 Ga. 573, 574-76 (630 SE2d 374) (2006); *Torres v. Elkin*, 317 Ga. App. 135, 141 (2) (730 SE2d 518) (2012).

[6] *Woodard*, 300 Ga. at 852 (1) (a) (punctuation omitted); *accord Frickey*, 280 Ga. at 574.

[7] *Woodard*, 300 Ga. at 852 (1) (a) (punctuation omitted); *accord Frickey*, 280 Ga. at 574. As our Supreme Court has rightly noted, "[t]hese basic contract law principles find their origin in the common law." *Woodard*, 300 Ga. at 853 (1) (a); *see also* 2 William Blackstone, Commentaries of the Laws on England 899 n.19 (William Draper Lewis ed., 1902) (noting that "an implied contract only differs from an express contract in the mode of proof; both equally proceed upon the mutual agreement of the parties, and cannot exist without it").

[8] *See Resurgens, P.C. v. Elliott*, 301 Ga. 589, 599 (2) (b) n.10 (800 SE2d 580) (2017) (cautioning that candor and cooperation, as opposed to "gotcha" moments and

sake and detail-oriented advocacy is often in the eye of the beholder."[9] It is important to remember, then, that an offeror's freedom to set the terms of an offer in the settlement context—even if those terms impose additional burdens on the offeree—should not be unduly restricted.[10]

Turning now to Wright's argument, he contends that because the appellees' offer letter did not explicitly prohibit notary signature lines, GEICO's inclusion of them was still in compliance with the offer's terms. We disagree.

To be sure, the appellees did not explicitly prohibit the inclusion of signature lines for a notary public. It is also true that we have held that the inclusion of items specifically noted for exclusion in an offer results in a counteroffer.[11] But here, an

gamesmanship, should be encouraged between litigating parties).

[9] *Pierce v. Banks*, 368 Ga. App. 496, 503 (890 SE2d 402) (2023) (Dillard, P. J., concurring fully and specially), *cert. denied* (Jan. 9, 2024).

[10] *See State Farm Fire & Cas. Co. v. Morgan*, 258 Ga. 276, 276 (368 SE2d 509) (1988) ("Public policy does not prevent a party from assuming by contract duties more burdensome than those imposed by law because of a party's right to refuse the contract."); *see also Patrick v. Kingston*, 370 Ga. App. 570, 576 (898 SE2d 560) (2024) (noting that "existing law includes the 'fundamental principle that an offeror is the master of his or her offer and free to set the terms thereof'") (citation omitted).

[11] *See, e.g., Ligon v. Hu*, 363 Ga. App. 251, 253 (2) (870 SE2d 802) (2022) (holding that response was a counteroffer rather than acceptance when "the release included a signature line for someone other than the [other party] for the purpose of

express exclusion was not necessary when the offer letter provided the *exact* requirements for signatories (without mentioning notarization), elsewhere included an explicit notarization requirement, and stated not once but twice that the release should be returned "without variance *of any sort*."[12] The inclusion of blank signature lines for a notary—not just for GEICO *but for the appellees as well*—was, then, a variance to the offer that imposed a new condition to executing the release—*i.e.*, notarization of all signatures.[13] And while complaining about such a variance is perhaps the height of pettiness, it nevertheless remains a variance—which was caused

---

notarizing the document, despite the offer expressly stating that 'inclusion of a place on the release for a signature of anyone other than [the other party] for any purpose at all will be a counteroffer and rejection"); *Pritchard v. Mendoza*, 357 Ga. App. 283, 288 (1) (850 SE2d 472) (2020) (holding that response was a counteroffer rather than an acceptance when the offeror "was explicit that she would not agree to any jurisdiction, venue, or choice of law provisions and that the inclusion of any such provisions in the release would render the release a counteroffer and a rejection of her offer").

[12] (Emphasis supplied).

[13] *See Pierce*, 368 Ga. App. at 500 (2) (a) ("The acceptance by act must be 'identical' and 'without variance of any sort.' An offeree's failure to comply with the precise terms of an offer is generally fatal to the formation of a valid contract." (citations & punctuation omitted)); *Torres*, 317 Ga. App. at 141 (2) ("[I]f a purported acceptance of the plaintiff's settlement offer imposes any new conditions, it constitutes a counteroffer rather than an acceptance.").

by GEICO being needlessly formal when it only had to comply with the appellees' express release requirements.[14]

We also reject Wright's assertion that the inclusion of the blank notary signature lines within the returned release was precatory[15] when the GEICO representative's signature was notarized and directly beside this were places for notarization beneath each of the appellees' signatures. Indeed, nothing about the release suggests that notarization was optional;[16] and a reasonable person who received

---

[14] OCGA § 9-11-67.1 (f) provides that "if a release is not provided with an offer to settle, a recipient's providing of a proposed release shall not be deemed a counteroffer." But it is undisputed that OCGA § 9-11-67.1 does not apply to this case because the offer to settle was made after Wright answered. *See* OCGA § 9-11-67.1 (b) (applying to offers made from "the time a cause of action accrues until the filing of an answer by the named defendant"); OCGA § 9-11-67.1 (f) (applying to offers made under OCGA § 9-11-67.1 (b)).

[15] *Torres*, 317 Ga. App. at 141 (2) ("Language is properly characterized as 'precatory' when its ordinary significance imports entreaty, recommendation, or expectation rather than any mandatory direction, and such language does not render a purported acceptance a counteroffer." (citations & punctuation omitted)).

[16] *See Newton v. Ragland*, 325 Ga. App. 371, 375 (1) (750 SE2d 768) (2013) (holding, when tender of policy limits by deadline constituted acceptance of an offer, that language in acceptance letter was precatory when it requested the other party to "please complete the attached release and return it" and that use of "a mandatory directive in a later sentence in its acceptance letter, that '[y]our signature(s) must be witnessed[,]' [did] not change our analysis, as this directive only related to how [the party] and his counsel were to sign the release; it did not mandate that a certain release

a document already notarized by another signatory with an area for notarization of their own signature would believe this additional step to be required.[17] And although Wright argues that what GEICO sent to the appellees was merely a "proposed release," the appellees' offer explicitly warned that they would not "strike through . . . conditions . . . contained in the release in order to make a non-complying release comply with the terms and conditions of this offer." In other words, the appellees were not going to simply ignore any new conditions GEICO added to the release or

be signed"); *Turner v. Williamson*, 321 Ga. App. 209, 214 (2) (738 SE2d 712) (2013) (holding, when there was no requirement that a particular release be signed, that a request that the plaintiffs "'please' sign the included release in conjunction with its statement that the $25,000 settlement check would be sent under separate cover did not impose a new condition on the settlement" but instead "included precatory words rather than mandatory direction").

[17] *Torres*, 317 Ga. App. at 142 (2) (holding that language stating, "I trust that your office will satisfy any liens arising out of this matter," is sufficiently insistent to indicate a requirement that was required to satisfy because "a reasonable person in the position of the other contracting party would interpret such language as imposing a condition, rather than as merely precatory"); *see Greenwald v. Kersh*, 275 Ga. App. 724, 727 (621 SE2d 465) (2005) ("Courts apply an objective theory of intent whereby one party's intention is deemed to be that meaning a reasonable man in the position of the other contracting party would ascribe to the first party's manifestations of assent, or that meaning which the other contracting party knew the first party ascribed to his manifestations of assent." (punctuation omitted)); *Legg v. Stovall Tire & Marine, Inc.*, 245 Ga. App. 594, 596 (538 SE2d 489) (2000) (same).

fix any failure to return an entirely compliant document. Instead, as appellees warned, "GEICO ha[d] to get it right the first time."

So, while the conditions imposed by the appellees' settlement offer are fairly characterized as unnecessarily stringent, bordering on petty), contract law permits such pettiness—no matter how distasteful it might seem to some. Appellees may have even set these stringent settlement conditions in the hope that GEICO would misstep and botch the acceptance of their offer; but that too is not barred by law—nor does it have any bearing on our analysis. In any event, the appellees can hardly be accused of hiding the ball. GEICO was told in stark and unambiguous terms what it needed to do to accept the appellees' settlement offer. But instead of following their instructions, GEICO's lack of attention to detail and decision to over complicate a simple task ultimately sealed its fate. As a result, because GEICO's release included a condition not required by the appellees' offer—*i.e.*, notarization of all signatures—it was a counteroffer, and the trial court did not err in finding there was no settlement agreement to enforce.[18]

---

[18] *See Pierce*, 368 Ga. App. at 500 (2) (a) ("The acceptance by act must be 'identical' and 'without variance of any sort.' An offeree's failure to comply with the precise terms of an offer is generally fatal to the formation of a valid contract." (citations & punctuation omitted)); *Torres*, 317 Ga. App. at 141 (2) ("[I]f a purported

For all these reasons, we affirm.

*Judgment affirmed. Mercier, C.J. concurs; Land, J., dissents.*

---

acceptance of the plaintiff's settlement offer imposes any new conditions, it constitutes a counteroffer rather than an acceptance.").

A25A0709. WRIGHT v. SPEARMAN et al.

LAND, Judge, dissenting.

Because GEICO unequivocally and timely accepted the plaintiffs' settlement demand and complied with all of the terms and conditions of that demand, I respectfully dissent. The inclusion of blank signature lines for a notary public in the release provided by GEICO was not in conflict with the settlement demand and did not seek to impose any new conditions that were prohibited by that demand. Accordingly, I would hold that the inclusion of these blank lines is legally irrelevant and does not change the fact that these parties reached a binding and enforceable settlement agreement.

Plaintiffs' demand letter required that GEICO perform four actions to accept the offer. GEICO performed all of them.

First, the letter required GEICO to "expressly accept the offer in writing, unequivocally and without variance of any sort, within twelve (12) days of its receipt of this letter, otherwise the offer shall be automatically withdrawn, such that it can no longer be accepted." GEICO complied with this requirement.

Second, the letter required GEICO to deliver payment in the demanded amount within two days of the date that GEICO sent its written acceptance letter. GEICO complied with this requirement.

Third, the letter required GEICO to "perform the act of delivering a release that fully complies with every requirement of this offer" and that the "release must be delivered on the same day" that GEICO provided its written acceptance letter. The letter stated that plaintiffs' counsel would "not revise or re-write the release sent by GEICO in order to make it comply with this offer" and would "not strike through non-complying terms, conditions, or representations contained in the release." The demand letter set forth numerous terms that were required to be included in the release to be drafted by GEICO. GEICO included all of these terms, complied with all of the demand's conditions, and did not include any language that was prohibited by the demand.

The demand letter required the release to contain the signature of an "authorized representative of GEICO." GEICO complied. The letter provided that

> the representative of GEICO should sign the release in a signature block formatted for that purpose. The signature block for the representative of GEICO should appear next to, be formatted similarly to, the signature block for our client. The signature block should contain the signatory's full name in printed text along with the signatory's professional title. If the proposed release does not contain the appropriate signature from the representative of GEICO, then GEICO's response will not constitute an acceptance of this offer.

There is no dispute concerning the fact that GEICO's proposed release complied with the offer's express requirements concerning the parties' signatures. Specifically, it contained identical signature lines for GEICO (with the signatory's name and title) and the plaintiffs. The fact that it also contained signature lines for a notary public beneath the signature lines for the parties does not alter this fact and is not a violation of any instructions or requirements of the demand since that demand was silent on the issue of notarization of the release and therefore did not prohibit the inclusion of signature lines for a notary public.

Fourth, the demand letter required that an "authorized representative of GEICO must sign a duly notarized, sworn affidavit swearing that the demanded

3

amount constitutes the entirety of the liability insurance available to Mr. Wright through GEICO," and "this affidavit must be delivered to Flanagan Law, P. C., contemporaneously with GEICO's written acceptance." GEICO complied with this requirement.

Finally, the letter provided that "[t]o form a valid settlement agreement, GEICO must accept this offer, unequivocally and without variance of any sort, by taking the actions specified in the paragraphs here." As a result, GEICO had until June 13, 2023 to perform three of the required acts of acceptance — delivery of the written acceptance letter, the release, and the affidavit of insurance — and until July 15, 2023 to deliver the $50,000 payment. As noted above, GEICO complied.

Because GEICO's acceptance letter was unequivocal and did not seek to add or change any of the terms of the agreement, and because the release it provided complied with all of the requirements expressly set forth in the plaintiffs' settlement demand, there was a binding settlement agreement that should be enforced. If the demand had expressly prohibited the inclusion of signature lines for a notary public, this would be a different case, but there was no such prohibition in this demand. See *Redfearn v. Moore*, 371 Ga. App. 655, 657 (1) (902 SE2d 233) (2024) (settlement agreement was not formed when appellee's offer of settlement *expressly prohibited* the

settlement payment from including "any terms, conditions, descriptions, expirations or restrictions that are not expressly permitted" by the offer and the insurance company sent a settlement check that imposed an additional restriction); *Ligon v. Hu*, 363 Ga. App. 251, 253 (2) (870 SE2d 802) (2022) (the addition of signature lines for a notary constituted a counteroffer when the settlement demand specified that the inclusion of a signature line for anyone other than the parties "for any purpose at all will be a counteroffer and rejection of this offer"); *Pritchard v. Mendoza*, 357 Ga. App. 283, 288-289 (850 SE2d 472) (2020) (no binding settlement was created when the release prepared by the defendant contained provisions that were *specifically prohibited* by the appellee's demand). Unlike the demands in *Redfearn*, *Ligon*, and *Pritchard*, the demand in this case did *not* include any prohibition against the inclusion of blank signature lines for a notary public.

Not only were the blank lines for a notary's signature not prohibited by the terms of the settlement demand, but there was no requirement that the plaintiffs sign the release before a notary. GEICO never stated that the plaintiffs' signatures had to be notarized, and if the plaintiffs had simply chosen to sign the release without notarization, there is no reason that release would be invalid in any way. Thus, at best, GEICO's inclusion of the signature lines was a mere suggestion or expectation rather

5

than a mandatory direction. As such, it was not a new condition or a counteroffer and did not defeat the parties' settlement agreement. See *Torres v. Elkin*, 317 Ga. App. 135, 141 (2) (730 SE2d 518) (2012) ("Language is properly characterized as 'precatory' when its ordinary significance imports entreaty, recommendation, or expectation rather than any mandatory direction, and such language does not render a purported acceptance a counteroffer") (punctuation and footnote omitted).

"The law favors compromise, and when parties have entered into a definite, certain, and unambiguous agreement to settle, it should be enforced." (Citation and punctuation omitted.) *Cumberland Contractors v. State Bank & Trust Co.*, 327 Ga. App. 121, 128 (3) (755 SE2d 511) (2014). In this case, the plaintiffs made a demand, GEICO unequivocally and timely accepted that demand, timely provided a check made out to the injured parties in the requested amount, and fully complied with all of the multiple requirements expressly set out in the demand when drafting its release. The fact that GEICO suggested, but did not require, that the plaintiffs' signatures be notarized by including blank signature lines for that purpose did not convert its acceptance into a counteroffer. Because an offer and unconditional acceptance are present here, I believe the parties' settlement agreement should be enforced, and I therefore respectfully dissent.